UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

| | | |
|---|---|---|
| APPLE, INC., a California corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | **NO. C 21-01707 EMC** |
| SIMON LANCASTER, an individual, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

San Francisco, California
Thursday, November 18, 2021

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiff:

      O'MELVENY & MYERS LLP
      Two Embarcadero Center - 28th Floor
      San Francisco, California  94111
      BY:  **DAVID R. EBERHART, ATTORNEY AT LAW**

For Defendant:

      RIMON, P.C.
      423 Washington Street - Suite 600
      San Francisco, California  94111
      BY:  **SCOTT R. RABER, ATTORNEY AT LAW**

      NOLAN BARTON BRADFORD OLMOS, LLP
      600 University Avenue
      Palo Alto, California  94301
      BY:  **DANIEL OLMOS, ATTORNEY AT LAW**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
      United States District Court - Official Reporter

<u>**Thursday - November 18, 2021**</u>                    <u>**3:01 p.m.**</u>

P R O C E E D I N G S

---000---

**THE CLERK:**  Calling civil action 21-1707, Apple, Inc. versus Lancaster.

Counsel, please state your appearances for the record beginning with Counsel for Plaintiff.

**MR. EBERHART:**  Good afternoon, Your Honor, David Eberhart on behalf of Apple, Inc.

**THE COURT:**  All right.  Thank you, Mr. Eberhart.

**MR. RABER:**  Good afternoon, Your Honor, Scott Raber for Defendant Simon Lancaster.

**THE COURT:**  All right.  Thank you, Mr. Raber.

**MR. OLMOS:**  And good afternoon, Your Honor, Daniel Olmos.  I have not noticed an appearance in this case, but I represent Mr. Lancaster in the criminal investigation.

**THE COURT:**  All right.  Thank you.

Well, maybe I can first see if there is any update from Mr. Olmos about the criminal investigation.  Do we know anything more at this point?

**MR. OLMOS:**  Your Honor, we do not know anything more substantively than is in my declaration.

I had a brief conversation with the District Attorney who is assigned to the case, but he had no substantive update for me to relay to the Court.

**THE COURT:** And I take it we have no idea when a decision might be forthcoming as to whether or not there is going to be prosecution or not?

**MR. OLMOS:** I don't have any -- I do not have for the Court a specific timeline that I can -- that I can convey my -- all I can do is suggest to the Court that based on my prior experience in these cases, particularly with the Santa Clara County District Attorney's Office, that I anticipate a decision will be made -- they are not going to drag their heels in my experience.

They have not prosecuted many trade secrets cases, the District Attorney's Office, over the past several years.

The ones they have prosecuted I think I have been involved in, and I can say to the Court that I do not expect that this will be a long -- a long, drawn out investigation.

But I can only say that based on experience and not based on anything that I was told specific to this investigation.

**THE COURT:** All right. Well, let me ask Apple, obviously on one side of the *Landis* ledger is the concern of Apple's interest.

I'm trying to figure out -- I understand the interest in moving forward and getting this case adjudicated.

But in terms of protecting its interests, stopping the dissemination of the alleged information that was taken, realistically if we are talking about trial, especially now

1   with the impacted schedule that the Court has, it's not

2   realistic to think, you know, that we are going to get to trial

3   in six months or eight months.

4        It's -- you know, it's lucky if we can get a trial date

5   within a year, frankly.  So it is some time off.

6        And then at the end, I'm not sure what the outcome is.  If

7   you prevail -- if Apple prevails and gets a judgment, I assume

8   monetary relief, declaratory relief, maybe some kind of

9   injunctive relief.  But that is some time out.

10       And, I guess, one question is:  What is the -- what is

11  the -- how does that judgment, let's say a year from now, all

12  things -- if that's -- frankly, that's kind of the optimistic

13  view -- but a judgment a year from now as opposed to, let's

14  say, 15 or 18 months from now, what is difference in terms of

15  real-world difference?

16       **MR. EBERHART:**  I think the real-world difference,

17  Your Honor, is in the interim Apple is at risk of having

18  further harm done to it through Mr. Lancaster's

19  misappropriation of trade secrets.

20       He worked at the company for about a decade.  He had

21  access to a broad group of trade secrets about Apple's products

22  and future products.

23       And while our complaint raises specific incidence where we

24  know that he misappropriated trade secrets, we don't know what

25  else he may have done.

And so we are left in the position of having Mr. Lancaster still have, at least in his head and maybe at other places physically or electronically, Apple's trade secrets where he could continue to harm the company by providing those to third parties or making use of them.

**THE COURT:** All right. So in the interim -- I guess that's my question. I haven't -- I don't recall seeing a motion for preliminary injunction or restraining order.

Go back to my question. Absent that, is it the delay between a judgment 12 months from now versus 18 months from now or whatever the -- if there is some kind of stay, the impact won't be felt until a judgment would have obtained anyway in the absence of a stay; you know what I mean?

So at best, you are going to get a judgment 12 to 15 months from now; but if there is a stay, let's say, 60 to 90 days, instead it is going to be 12 to 15 months from now or 15 to 18 months from now, what is the harm with that delta, that incremental difference?

**MR. EBERHART:** I think the other issue, Your Honor, is we run the risk of losing access to witnesses and evidence during that time. You know, that was the harm that was recognized in *Southwest Marine*.

You know, witnesses relocate; memories fade; and people aggrieved; are unable to seek vindication. Maybe memories aren't going to fade over 60 to 90 days, but we are already

1    having trouble finding witnesses in this case.

2        And, you know, so I think it is a very real issue.

3    Mr. Lancaster has identified certain witnesses in his discovery

4    responses.  And some of those people cannot be found.

5        So I am concerned that time is of the essence to complete

6    discovery even if the trial is not going to happen until, you

7    know, a relatively date (sic) far in the future.

8        **THE COURT:**  All right.  Well, that raises the next

9    topic I was going to raise with you-all; and that is, why can't

10   discovery go on like third-party witnesses, trying to find

11   people, without compromising or severely impacting

12   Mr. Lancaster's Fifth Amendment rights?

13       In other words, not every piece of discovery implicates

14   the Fifth Amendment.  So, why can't there be some ongoing

15   discovery?

16       Even if we, for instance, allowed him to to stay clear of

17   Fifth Amendment issues, let's say, for a limited period for the

18   next 60 to 90 days, can you construct a discovery plan that

19   still is useful but doesn't necessarily fall into that Fifth

20   Amendment zone?

21       **MR. RABER:**  Your Honor, if I might speak to that --

22   and subject to Mr. Olmos' views on the criminal side -- I

23   suppose there are some narrow zones that Apple might be able to

24   proceed with respect to third party, but obviously there is the

25   concern that discovery effectively seeks admissions of

1    Mr. Lancaster.

2        The other, you know, concern I would have there really is

3    the meat of the discovery here all rests with Mr. Lancaster and

4    what he did or did not do.

5        And the discovery that is outstanding with respect to

6    Mr. Lancaster is going to be just really a generation device

7    for disputes over his Fifth Amendment rights.

8        In summary, the categories of document requests that are

9    now sensitive given the criminal investigation that are hanging

10   out there concern basically everything he would have obtained

11   from Apple, everything that he allegedly photographed or has

12   video of, anything that he -- people he may have met with

13   relating to Apple information; on the motive side, as they have

14   alleged, documents concerning his investments in a couple of

15   companies that they contend he had a self interest in with

16   respect to the trade secrets and documents relating to other

17   meetings that he may have attended with respect to trade

18   secrets.

19       The mere act of production on these -- I think in looking

20   at these, we can't see a way where we could produce anything on

21   this.

22       So the vast majority of discovery here, I think, is going

23   to be subject to further disputes about Fifth Amendment

24   assertion if we go forward.

25           **THE COURT:**  And do you agree with that, Mr. Eberhart,

that the mere production of some of these listed documents would implicate Fifth Amendment?

**MR. EBERHART:** I don't, Your Honor. Fundamentally Mr. Lancaster is trying to withdraw a concession that his opening brief made; and that is, page 5, lines 18 and 19, he wrote that the criminal investigation is focused on Mr. Lancaster's alleged downloads on or around his last day of employment with Apple, full stop.

So this idea that all these other topics are at issue in the criminal case is fundamentally at odds with that concession that was made in the opening brief.

And the argument that is being made in the reply is: Well, the subpoenas that were issued by the District Attorney are broad; hence, the overlap in scope between the civil action and the criminal investigation is complete.

But no case has ever recognized such a test. That is, that you compare the breadth of subpoenas issued by the DA or by a grand jury to the scope of the civil case.

The question is: What is the scope of the indictment compared to the scope of the civil case.

And here the anticipated scope of the indictment, according to Mr. Lancaster's counsel, is the alleged downloads on his last day of employment at Apple.

So our view is that there is a substantial area where discovery is possible so long as it doesn't deal with the

downloads on Mr. Lancaster's last day at Apple.

    **THE COURT:** Yeah, the problem is we don't have the indictment; and it is hard to compare.

    And an assertion in an interrogatory response, I don't know if that constitutes a knowing waiver on the edges of a Fifth Amendment right. It has got to be knowingly and intelligent.

    And that is a little bit of thin ice. So, I would be hesitant to reach a conclusion yet on that.

    I asked a more simple question. I guess the answer is yes. And that is, the mere act of production -- let's say it's a narrow zone, the mere act of producing these documents, if it is within the scope of the indictment, would implicate the Fifth Amendment?

    **MR. EBERHART:** I don't agree, Your Honor.

    **THE COURT:** You don't?

    **MR. EBERHART:** The documents have been -- according to Mr. Lancaster's counsel, documents have been obtained from him via search warrants, via subpoenas, from the DA.

    I'm aware of nothing that we have requested that would fall outside of what the DA has obtained through his investigation.

    **THE COURT:** Oh, so anything already attained by the DA should not implicate Fifth Amendment since they have already been produced?

1          **MR. EBERHART:**  Correct.

2          **THE COURT:**  And it has been demonstrated to be within

3     his possession.

4          **MR. EBERHART:**  Correct.

5          **THE COURT:**  And in there having been obtained.  All

6     right.  So, for instance, you would argue that at least

7     discovery for that; discovery with respect to these

8     third-party -- these witnesses who you are afraid are

9     disappearing and memories may be fading -- I mean, I guess

10    where I'm headed is why not at least for now limit discovery,

11    let's say, for the next 60 days; see what the DA does.

12         And it may all be over in 60 days if -- I know you didn't

13    set a timeframe, Mr. Olmos; but if they don't drag their feet

14    and move along and they don't prosecute, hopefully we will know

15    that sooner.

16         Meanwhile, there is not a complete standstill.  Then Apple

17    can -- especially when it comes to, you know, witnesses and

18    fading memory and this sort of thing, if you want to do

19    third-party subpoenas or other kinds of discovery; and with

20    respect to requests to produce those documents already obtained

21    by the DA, it is hard to find how there could be a residual

22    Fifth Amendment right in producing those.

23         **MR. RABER:**  Your Honor, if I may speak to that.

24         **THE COURT:**  Yeah.

25         **MR. RABER:**  We don't agree with that premise that

Mr. Eberhart just set out in the slightest.

First of all, the opening brief addressed one of the most concrete statements of what the search warrants were addressing, which was the downloads.

As I noted in the reply brief, the search warrants go back to, like, March 2019, well before he terminated his employment with Apple; and they address documents after his termination by several months.

Apple, in its complaint here, has alleged that the subterfuge began around that time, at least many months prior to his last date and around the time that the alleged certain downloads occurred. So there is an overlap just there on what the DA is looking at.

Secondly, we produced -- I think what Mr. Eberhart is referring to, we produced some material when we were in the dark about a criminal investigation happening. We did that over the summer in an attempt to try to come to some resolution of this case.

Clearly, had we known that there was a criminal investigation afoot, I think we would have been in a different calculus there.

In terms of the waiver law as set forth in the reply brief, as Your Honor just noted, I don't think we have at any point in time a knowing and voluntary waiver.

I mean, in fact, the moment we understood that there was

1    an investigation and that these warrants had been issued is

2    when we raised this.

3         **THE COURT:** Yeah. I wasn't actually talking about the

4    waiver. I was talking about something more simple; that is, to

5    the extent they want -- Apple wants documents that have already

6    been searched and seized or somehow turned over to the DA, I'm

7    not sure what additional Fifth Amendment concern there is with

8    respect to that because it has already been turned over; and it

9    is obvious where these documents came from.

10        So that doesn't involve a waiver. That is just sort of

11   more of a moot point kind of a thing.

12        **MR. RABER:** Right. And we have no idea what the scope

13   of those documents would be at this point. I assume there

14   might be some overlap with what we previously voluntarily

15   provided, but it could go well beyond that.

16        **THE COURT:** Okay. And what about -- you mentioned,

17   Mr. Eberhart, third-party witnesses; you are afraid about

18   losing access to them, fading memories, disappearing. Is there

19   something you want to conduct with respect to them?

20        **MR. EBERHART:** Certainly, Your Honor. We would like

21   to continue -- we have already issued third-party subpoenas.

22   We found one of the witnesses that Mr. Lancaster identified.

23        Another one, either we can't find him or he is evading

24   service. We have been trying for many weeks to serve that

25   individual. I would like to certainly be able to continue

doing that.

With respect to the document production, again, I'm not -- as the Court aptly points out, I'm not pointing to the documents that Mr. Lancaster produced to Apple earlier this year.

I'm pointing to the fact that he has provided to the Government a substantial tranche of documents.

Presumably, he has some records of what he provided to the Government. And if there is overlap between those, there is no reason that he can't provide those to us.

**MR. RABER:** Your Honor, we have not been the subject of the search warrants. These warrants were executed on third parties, so we don't know what has been produced or not.

The search warrants, as you will see in Mr. Olmos' declaration, were served on Box, Google, Apple, and apparently they -- the FBI.

So, you know, I don't know. We are not the source of the returns on the search warrants.

**MR. OLMOS:** I can certainly attest, Your Honor, that I have not produced anything to the Government on behalf of Mr. Lancaster.

**THE COURT:** All right. Has Apple sought documents in parallel to those which have been -- from third parties that have been searched -- subject to search warrants in the criminal action? Is that something that Apple is pursuing?

1    **MR. EBERHART:**  The material that Apple understands

2    that the Government has obtained from third parties I do not

3    believe we would be able to -- Apple would be able to obtain

4    that from third parties absent the consent from Mr. Lancaster.

5        For instance, the records from Google that were

6    referenced, those sorts of things, I don't believe that we

7    would be able to issue a subpoena to Google and get

8    Mr. Lancaster's account contents without his consent.

9        **THE COURT:**  If that's the case, is there a Fifth

10   Amendment problem with providing that consent?

11       **MR. RABER:**  I believe -- well, I will defer to

12   Mr. Olmos as criminal counsel, but I imagine there would be.

13       **MR. OLMOS:**  Yes, Your Honor.  I think my position

14   would be that -- well, with respect to the third party --

15       **THE COURT:**  Yeah.

16       **MR. OLMOS:**  The third parties, well, Your Honor, my

17   understanding is that the bulk of that is, you know, going to

18   be e-mail communications and other communications that are

19   Mr. Lancaster's or at least that he is a party to them.

20       And so, yes, the act of production I think would implicate

21   the Fifth Amendment.

22       **THE COURT:**  The act of production by a third party,

23   not by the -- by the suspect but by a third party would

24   implicate -- would constitute some kind of admission or

25   confession by the -- I'm having a conceptual problem with that.

**MR. OLMOS:** Yeah, I'm having a little conceptual problem with it too, Your Honor. I had not thought about that specific issue, about whether Mr. Lancaster, if put to him, whether he would waive production by the Government to Apple.

I have never seen that done. I have never had that done in any of the cases that I have been involved in.

Frankly, my experience in these cases has been that the Government is very willing to show Counsel for Apple everything they get from these subpoenas, and there is no waiver that is required. That has been my experience.

And so I suppose if Counsel for Apple contacts the DA's office and was told: No, we are not going to show you that; we are not going to give it to you, we might be in a different position. I don't anticipate that to be the case, though.

**THE COURT:** Let's do this: I'm going to grant a limited stay for 60 days. I'm going to come back in 60 days -- and Angie will want to get a date from you.

I'm going to allow continuing discovery along the lines that we talked about; the third-party searches, subpoenas, other attempts to obtain third-party information and cooperation. I don't see that as implicating Fifth Amendment concerns.

And with respect to obtaining documents that the Government in the criminal proceeding -- so the DA have obtained -- I think Apple ought to make that inquiry to see if

1    there is a problem of the Government sharing those.

2         And if not and if consent is needed, I would like the

3    parties to meet and confer to see whether that consent can be

4    obtained.

5         I don't see a Fifth Amendment problem offhand.  But, you

6    know, if there is a dispute, then you can submit to me a very

7    short letter brief, not to exceed three pages, telling me what

8    the law is on that particular question since I just sprung it

9    on you.

10        My goal is to keep things moving.  Even though right now

11   I'm just staying things for 60 days, I -- it seems to me some

12   useful things that can happen that can keep us sort of clear of

13   the Fifth Amendment problem.

14        Now, at the end of 60 days, depending on what happens,

15   there may come a point where I say:  We have got to move

16   forward or we don't move forward.  I don't know what I'm going

17   to do.

18        I would like some things to happen between now and 60 days

19   along the lines that I have suggested.  At least that can be

20   some productive time spent.

21        And let's see where we are at, and maybe we will hear from

22   the DA what is going on.  So, Angie, can we set a status?

23        **THE CLERK:**  Sure.  That would be January 18th for a

24   status.

25        **THE COURT:**  January 18th at 2:30?

1          **THE CLERK:**  Yes.

2          **THE COURT:**  All right.  So I will get out a minute

3   order just memorializing what I just said, but that is the

4   disposition of the current motion.

5          **MR. EBERHART:**  May I note one thing, Your Honor?

6          **THE COURT:**  Yeah.

7          **MR. EBERHART:**  We currently have a fact discovery

8   cutoff, I believe, of January 20th.  Obviously, we are not

9   going to be able to --

10         **THE COURT:**  Yeah, we will have to -- for now I will

11  have to extend that.  Since I'm kind of putting a hold on

12  things for 60 days, we will have to extend that by 60 days.

13      That may change everything behind that.  Let's address the

14  rest of the schedule once we get there.

15      Yes, the discovery cutoff will have to be moved by at

16  least 60 days given what I have just done.

17         **MR. RABER:**  Thank you, Your Honor.

18         **MR. EBERHART:**  Thank you, Your Honor.

19      **MR. OLMOS:**  Thank you.

20      **THE COURT:**  All right.  So we will see you in January.

21              (Proceedings adjourned at 3:23 p.m.)

22                      ---oOo---

23

24

25

1
2
3                    __CERTIFICATE OF REPORTER__

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:    Friday, January 21, 2022

8

9

10

11     _____

12            Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25