Hon. Edward M. Chen
District Judge
U.S. District Court Northern District of California
450 Golden Gate Avenue, Courtroom 5-17th Floor
San Francisco, CA 94102

**Re:**   ***Apple Inc. v. Lancaster*, No. 3:21-cv-01707-EMC – Status of Limited Stay**

Dear Judge Chen:

Counsel for the parties have met and conferred in a good faith attempt to resolve disputes that have recently arisen regarding the limited stay of party discovery that this Court ordered on November 18, 2021. Dkt. 41. The parties have been unable to reach a resolution and hereby jointly request the Court clarify the status of the limited stay.

## I.     Apple's Position

The Court's order is unambiguous that the limited stay had a duration of 60 days. Dkt. 41. Consequently, the stay lifted on January 17, 2022. *Id.* Magistrate Judge Spero previously ordered that Mr. Lancaster complete production of documents in response to Apple's First Request for Production within seven days of any denial or lifting of the stay. Dkt. 40. To date, Mr. Lancaster has not complied with that order.

## II.    Mr. Lancaster's Position

In granting the 60-day limited stay on November 18, 2021, the Court suggested that there might be some discovery avenues that do not implicate Fifth Amendment concerns, and set a status conference for January 18, 2022 to determine whether a continued stay remained appropriate under the circumstances. Tr. 15:15-17:17.

In the parties' January 11, 2022 Joint Status Report (Dkt. 42), Lancaster requested that the stay be continued to March 18, 2022 – both because the criminal investigation against Lancaster remains active, and because Lancaster anticipates significant Fifth Amendment concerns arising in discovery in the absence of a stay. The Court continued the January 18, 2022 status conference to March 8, 2022, but did not expressly address the status of the stay. Dkt. 43. Accordingly, Lancaster respectfully seeks clarification as to whether the limited stay remains in effect until the next status conference on March 8, 2022.

Dated: January 25, 2022        Respectfully submitted,


DAVID R. EBERHART
SHARON M. BUNZEL
ANDREW M. LEVAD
O'MELVENY & MYERS LLP


By:      _/s/ David R. Eberhart_
           David R. Eberhart

Attorneys for Plaintiff
APPLE INC.


Dated: January 25, 2022        SCOTT R. RABER
MATTHEW H. POPPE
RIMON, P.C.


By:      _/s/ Scott R. Raber_
           Scott R. Raber

Attorneys for Mr. Lancaster
SIMON LANCASTER

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from the other signatory parties.


*/s/ David R. Eberhart*
David R. Eberhart

Pages 1 - 17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

APPLE, INC., a California      )
corporation,                   )
                               )
          Plaintiff,           )
                               )
  VS.                          )      **NO. C 21-01707 EMC**
                               )
SIMON LANCASTER, an            )
individual,                    )
                               )
          Defendant.           )
_____)

San Francisco, California
Thursday, November 18, 2021

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiff:
                    O'MELVENY & MYERS LLP
                    Two Embarcadero Center - 28th Floor
                    San Francisco, California  94111
              BY:  **DAVID R. EBERHART, ATTORNEY AT LAW**

For Defendant:
                    RIMON, P.C.
                    423 Washington Street - Suite 600
                    San Francisco, California  94111
              BY:  **SCOTT R. RABER, ATTORNEY AT LAW**

                    NOLAN BARTON BRADFORD OLMOS, LLP
                    600 University Avenue
                    Palo Alto, California  94301
              BY:  **DANIEL OLMOS, ATTORNEY AT LAW**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

<u>**Thursday - November 18, 2021**</u>                    <u>**3:01 p.m.**</u>

P R O C E E D I N G S

---oOo---

**THE CLERK:**  Calling civil action 21-1707, Apple, Inc. versus Lancaster.

Counsel, please state your appearances for the record beginning with Counsel for Plaintiff.

**MR. EBERHART:**  Good afternoon, Your Honor, David Eberhart on behalf of Apple, Inc.

**THE COURT:**  All right.  Thank you, Mr. Eberhart.

**MR. RABER:**  Good afternoon, Your Honor, Scott Raber for Defendant Simon Lancaster.

**THE COURT:**  All right.  Thank you, Mr. Raber.

**MR. OLMOS:**  And good afternoon, Your Honor, Daniel Olmos.  I have not noticed an appearance in this case, but I represent Mr. Lancaster in the criminal investigation.

**THE COURT:**  All right.  Thank you.

Well, maybe I can first see if there is any update from Mr. Olmos about the criminal investigation.  Do we know anything more at this point?

**MR. OLMOS:**  Your Honor, we do not know anything more substantively than is in my declaration.

I had a brief conversation with the District Attorney who is assigned to the case, but he had no substantive update for me to relay to the Court.

1          **THE COURT:**  And I take it we have no idea when a

2    decision might be forthcoming as to whether or not there is

3    going to be prosecution or not?

4          **MR. OLMOS:**  I don't have any -- I do not have for the

5    Court a specific timeline that I can -- that I can convey my --

6    all I can do is suggest to the Court that based on my prior

7    experience in these cases, particularly with the Santa Clara

8    County District Attorney's Office, that I anticipate a decision

9    will be made -- they are not going to drag their heels in my

10   experience.

11         They have not prosecuted many trade secrets cases, the

12   District Attorney's Office, over the past several years.

13         The ones they have prosecuted I think I have been involved

14   in, and I can say to the Court that I do not expect that this

15   will be a long -- a long, drawn out investigation.

16         But I can only say that based on experience and not based

17   on anything that I was told specific to this investigation.

18         **THE COURT:**  All right.  Well, let me ask Apple,

19   obviously on one side of the *Landis* ledger is the concern of

20   Apple's interest.

21         I'm trying to figure out -- I understand the interest in

22   moving forward and getting this case adjudicated.

23         But in terms of protecting its interests, stopping the

24   dissemination of the alleged information that was taken,

25   realistically if we are talking about trial, especially now

1    with the impacted schedule that the Court has, it's not

2    realistic to think, you know, that we are going to get to trial

3    in six months or eight months.

4         It's -- you know, it's lucky if we can get a trial date

5    within a year, frankly.  So it is some time off.

6         And then at the end, I'm not sure what the outcome is.  If

7    you prevail -- if Apple prevails and gets a judgment, I assume

8    monetary relief, declaratory relief, maybe some kind of

9    injunctive relief.  But that is some time out.

10        And, I guess, one question is:  What is the -- what is

11   the -- how does that judgment, let's say a year from now, all

12   things -- if that's -- frankly, that's kind of the optimistic

13   view -- but a judgment a year from now as opposed to, let's

14   say, 15 or 18 months from now, what is difference in terms of

15   real-world difference?

16        **MR. EBERHART:**  I think the real-world difference,

17   Your Honor, is in the interim Apple is at risk of having

18   further harm done to it through Mr. Lancaster's

19   misappropriation of trade secrets.

20        He worked at the company for about a decade.  He had

21   access to a broad group of trade secrets about Apple's products

22   and future products.

23        And while our complaint raises specific incidence where we

24   know that he misappropriated trade secrets, we don't know what

25   else he may have done.

1        And so we are left in the position of having Mr. Lancaster

2   still have, at least in his head and maybe at other places

3   physically or electronically, Apple's trade secrets where he

4   could continue to harm the company by providing those to third

5   parties or making use of them.

6        **THE COURT:**  All right.  So in the interim -- I guess

7   that's my question.  I haven't -- I don't recall seeing a

8   motion for preliminary injunction or restraining order.

9        Go back to my question.  Absent that, is it the delay

10  between a judgment 12 months from now versus 18 months from now

11  or whatever the -- if there is some kind of stay, the impact

12  won't be felt until a judgment would have obtained anyway in

13  the absence of a stay; you know what I mean?

14       So at best, you are going to get a judgment 12 to 15

15  months from now; but if there is a stay, let's say, 60 to 90

16  days, instead it is going to be 12 to 15 months from now or 15

17  to 18 months from now, what is the harm with that delta, that

18  incremental difference?

19       **MR. EBERHART:**  I think the other issue, Your Honor, is

20  we run the risk of losing access to witnesses and evidence

21  during that time.  You know, that was the harm that was

22  recognized in *Southwest Marine*.

23       You know, witnesses relocate; memories fade; and people

24  aggrieved; are unable to seek vindication.  Maybe memories

25  aren't going to fade over 60 to 90 days, but we are already

1  having trouble finding witnesses in this case.

2      And, you know, so I think it is a very real issue.

3  Mr. Lancaster has identified certain witnesses in his discovery

4  responses.  And some of those people cannot be found.

5      So I am concerned that time is of the essence to complete

6  discovery even if the trial is not going to happen until, you

7  know, a relatively date (sic) far in the future.

8          THE COURT:  All right.  Well, that raises the next

9  topic I was going to raise with you-all; and that is, why can't

10  discovery go on like third-party witnesses, trying to find

11  people, without compromising or severely impacting

12  Mr. Lancaster's Fifth Amendment rights?

13      In other words, not every piece of discovery implicates

14  the Fifth Amendment.  So, why can't there be some ongoing

15  discovery?

16      Even if we, for instance, allowed him to to stay clear of

17  Fifth Amendment issues, let's say, for a limited period for the

18  next 60 to 90 days, can you construct a discovery plan that

19  still is useful but doesn't necessarily fall into that Fifth

20  Amendment zone?

21          MR. RABER:  Your Honor, if I might speak to that --

22  and subject to Mr. Olmos' views on the criminal side -- I

23  suppose there are some narrow zones that Apple might be able to

24  proceed with respect to third party, but obviously there is the

25  concern that discovery effectively seeks admissions of

1    Mr. Lancaster.

2        The other, you know, concern I would have there really is

3    the meat of the discovery here all rests with Mr. Lancaster and

4    what he did or did not do.

5        And the discovery that is outstanding with respect to

6    Mr. Lancaster is going to be just really a generation device

7    for disputes over his Fifth Amendment rights.

8        In summary, the categories of document requests that are

9    now sensitive given the criminal investigation that are hanging

10   out there concern basically everything he would have obtained

11   from Apple, everything that he allegedly photographed or has

12   video of, anything that he -- people he may have met with

13   relating to Apple information; on the motive side, as they have

14   alleged, documents concerning his investments in a couple of

15   companies that they contend he had a self interest in with

16   respect to the trade secrets and documents relating to other

17   meetings that he may have attended with respect to trade

18   secrets.

19       The mere act of production on these -- I think in looking

20   at these, we can't see a way where we could produce anything on

21   this.

22       So the vast majority of discovery here, I think, is going

23   to be subject to further disputes about Fifth Amendment

24   assertion if we go forward.

25           **THE COURT:**  And do you agree with that, Mr. Eberhart,

1  that the mere production of some of these listed documents

2  would implicate Fifth Amendment?

3       **MR. EBERHART:**  I don't, Your Honor.  Fundamentally

4  Mr. Lancaster is trying to withdraw a concession that his

5  opening brief made; and that is, page 5, lines 18 and 19, he

6  wrote that the criminal investigation is focused on

7  Mr. Lancaster's alleged downloads on or around his last day of

8  employment with Apple, full stop.

9       So this idea that all these other topics are at issue in

10 the criminal case is fundamentally at odds with that concession

11 that was made in the opening brief.

12      And the argument that is being made in the reply is:

13 Well, the subpoenas that were issued by the District Attorney

14 are broad; hence, the overlap in scope between the civil action

15 and the criminal investigation is complete.

16      But no case has ever recognized such a test.  That is,

17 that you compare the breadth of subpoenas issued by the DA or

18 by a grand jury to the scope of the civil case.

19      The question is:  What is the scope of the indictment

20 compared to the scope of the civil case.

21      And here the anticipated scope of the indictment,

22 according to Mr. Lancaster's counsel, is the alleged downloads

23 on his last day of employment at Apple.

24      So our view is that there is a substantial area where

25 discovery is possible so long as it doesn't deal with the

1   downloads on Mr. Lancaster's last day at Apple.

2         **THE COURT:**  Yeah, the problem is we don't have the

3   indictment; and it is hard to compare.

4         And an assertion in an interrogatory response, I don't

5   know if that constitutes a knowing waiver on the edges of a

6   Fifth Amendment right.  It has got to be knowingly and

7   intelligent.

8         And that is a little bit of thin ice.  So, I would be

9   hesitant to reach a conclusion yet on that.

10        I asked a more simple question.  I guess the answer is

11  yes.  And that is, the mere act of production -- let's say it's

12  a narrow zone, the mere act of producing these documents, if it

13  is within the scope of the indictment, would implicate the

14  Fifth Amendment?

15        **MR. EBERHART:**  I don't agree, Your Honor.

16        **THE COURT:**  You don't?

17        **MR. EBERHART:**  The documents have been -- according to

18  Mr. Lancaster's counsel, documents have been obtained from him

19  via search warrants, via subpoenas, from the DA.

20        I'm aware of nothing that we have requested that would

21  fall outside of what the DA has obtained through his

22  investigation.

23        **THE COURT:**  Oh, so anything already attained by the DA

24  should not implicate Fifth Amendment since they have already

25  been produced?

1          **MR. EBERHART:**  Correct.

2          **THE COURT:**  And it has been demonstrated to be within

3    his possession.

4          **MR. EBERHART:**  Correct.

5          **THE COURT:**  And in there having been obtained.  All

6    right.  So, for instance, you would argue that at least

7    discovery for that; discovery with respect to these

8    third-party -- these witnesses who you are afraid are

9    disappearing and memories may be fading -- I mean, I guess

10   where I'm headed is why not at least for now limit discovery,

11   let's say, for the next 60 days; see what the DA does.

12        And it may all be over in 60 days if -- I know you didn't

13   set a timeframe, Mr. Olmos; but if they don't drag their feet

14   and move along and they don't prosecute, hopefully we will know

15   that sooner.

16        Meanwhile, there is not a complete standstill.  Then Apple

17   can -- especially when it comes to, you know, witnesses and

18   fading memory and this sort of thing, if you want to do

19   third-party subpoenas or other kinds of discovery; and with

20   respect to requests to produce those documents already obtained

21   by the DA, it is hard to find how there could be a residual

22   Fifth Amendment right in producing those.

23          **MR. RABER:**  Your Honor, if I may speak to that.

24          **THE COURT:**  Yeah.

25          **MR. RABER:**  We don't agree with that premise that

1    Mr. Eberhart just set out in the slightest.

2        First of all, the opening brief addressed one of the most

3    concrete statements of what the search warrants were

4    addressing, which was the downloads.

5        As I noted in the reply brief, the search warrants go back

6    to, like, March 2019, well before he terminated his employment

7    with Apple; and they address documents after his termination by

8    several months.

9        Apple, in its complaint here, has alleged that the

10   subterfuge began around that time, at least many months prior

11   to his last date and around the time that the alleged certain

12   downloads occurred.  So there is an overlap just there on what

13   the DA is looking at.

14       Secondly, we produced -- I think what Mr. Eberhart is

15   referring to, we produced some material when we were in the

16   dark about a criminal investigation happening.  We did that

17   over the summer in an attempt to try to come to some resolution

18   of this case.

19       Clearly, had we known that there was a criminal

20   investigation afoot, I think we would have been in a different

21   calculus there.

22       In terms of the waiver law as set forth in the reply

23   brief, as Your Honor just noted, I don't think we have at any

24   point in time a knowing and voluntary waiver.

25       I mean, in fact, the moment we understood that there was

an investigation and that these warrants had been issued is
when we raised this.

     **THE COURT:**  Yeah.  I wasn't actually talking about the
waiver.  I was talking about something more simple; that is, to
the extent they want -- Apple wants documents that have already
been searched and seized or somehow turned over to the DA, I'm
not sure what additional Fifth Amendment concern there is with
respect to that because it has already been turned over; and it
is obvious where these documents came from.

    So that doesn't involve a waiver.  That is just sort of
more of a moot point kind of a thing.

     **MR. RABER:**  Right.  And we have no idea what the scope
of those documents would be at this point.  I assume there
might be some overlap with what we previously voluntarily
provided, but it could go well beyond that.

     **THE COURT:**  Okay.  And what about -- you mentioned,
Mr. Eberhart, third-party witnesses; you are afraid about
losing access to them, fading memories, disappearing.  Is there
something you want to conduct with respect to them?

     **MR. EBERHART:**  Certainly, Your Honor.  We would like
to continue -- we have already issued third-party subpoenas.
We found one of the witnesses that Mr. Lancaster identified.

    Another one, either we can't find him or he is evading
service.  We have been trying for many weeks to serve that
individual.  I would like to certainly be able to continue

1   doing that.

2       With respect to the document production, again, I'm not --

3   as the Court aptly points out, I'm not pointing to the

4   documents that Mr. Lancaster produced to Apple earlier this

5   year.

6       I'm pointing to the fact that he has provided to the

7   Government a substantial tranche of documents.

8       Presumably, he has some records of what he provided to the

9   Government.  And if there is overlap between those, there is no

10  reason that he can't provide those to us.

11      **MR. RABER:**  Your Honor, we have not been the subject

12  of the search warrants.  These warrants were executed on third

13  parties, so we don't know what has been produced or not.

14      The search warrants, as you will see in Mr. Olmos'

15  declaration, were served on Box, Google, Apple, and apparently

16  they -- the FBI.

17      So, you know, I don't know.  We are not the source of the

18  returns on the search warrants.

19      **MR. OLMOS:**  I can certainly attest, Your Honor, that I

20  have not produced anything to the Government on behalf of

21  Mr. Lancaster.

22      **THE COURT:**  All right.  Has Apple sought documents in

23  parallel to those which have been -- from third parties that

24  have been searched -- subject to search warrants in the

25  criminal action?  Is that something that Apple is pursuing?

1          **MR. EBERHART:**  The material that Apple understands

2     that the Government has obtained from third parties I do not

3     believe we would be able to -- Apple would be able to obtain

4     that from third parties absent the consent from Mr. Lancaster.

5          For instance, the records from Google that were

6     referenced, those sorts of things, I don't believe that we

7     would be able to issue a subpoena to Google and get

8     Mr. Lancaster's account contents without his consent.

9          **THE COURT:**  If that's the case, is there a Fifth

10    Amendment problem with providing that consent?

11         **MR. RABER:**  I believe -- well, I will defer to

12    Mr. Olmos as criminal counsel, but I imagine there would be.

13         **MR. OLMOS:**  Yes, Your Honor.  I think my position

14    would be that -- well, with respect to the third party --

15         **THE COURT:**  Yeah.

16         **MR. OLMOS:**  The third parties, well, Your Honor, my

17    understanding is that the bulk of that is, you know, going to

18    be e-mail communications and other communications that are

19    Mr. Lancaster's or at least that he is a party to them.

20         And so, yes, the act of production I think would implicate

21    the Fifth Amendment.

22         **THE COURT:**  The act of production by a third party,

23    not by the -- by the suspect but by a third party would

24    implicate -- would constitute some kind of admission or

25    confession by the -- I'm having a conceptual problem with that.

1          **MR. OLMOS:**  Yeah, I'm having a little conceptual

2     problem with it too, Your Honor.  I had not thought about that

3     specific issue, about whether Mr. Lancaster, if put to him,

4     whether he would waive production by the Government to Apple.

5          I have never seen that done.  I have never had that done

6     in any of the cases that I have been involved in.

7          Frankly, my experience in these cases has been that the

8     Government is very willing to show Counsel for Apple everything

9     they get from these subpoenas, and there is no waiver that is

10    required.  That has been my experience.

11         And so I suppose if Counsel for Apple contacts the DA's

12    office and was told:  No, we are not going to show you that; we

13    are not going to give it to you, we might be in a different

14    position.  I don't anticipate that to be the case, though.

15         **THE COURT:**  Let's do this:  I'm going to grant a

16    limited stay for 60 days.  I'm going to come back in 60 days --

17    and Angie will want to get a date from you.

18         I'm going to allow continuing discovery along the lines

19    that we talked about; the third-party searches, subpoenas,

20    other attempts to obtain third-party information and

21    cooperation.  I don't see that as implicating Fifth Amendment

22    concerns.

23         And with respect to obtaining documents that the

24    Government in the criminal proceeding -- so the DA have

25    obtained -- I think Apple ought to make that inquiry to see if

 1   there is a problem of the Government sharing those.

 2        And if not and if consent is needed, I would like the

 3   parties to meet and confer to see whether that consent can be

 4   obtained.

 5        I don't see a Fifth Amendment problem offhand.  But, you

 6   know, if there is a dispute, then you can submit to me a very

 7   short letter brief, not to exceed three pages, telling me what

 8   the law is on that particular question since I just sprung it

 9   on you.

10        My goal is to keep things moving.  Even though right now

11   I'm just staying things for 60 days, I -- it seems to me some

12   useful things that can happen that can keep us sort of clear of

13   the Fifth Amendment problem.

14        Now, at the end of 60 days, depending on what happens,

15   there may come a point where I say:  We have got to move

16   forward or we don't move forward.  I don't know what I'm going

17   to do.

18        I would like some things to happen between now and 60 days

19   along the lines that I have suggested.  At least that can be

20   some productive time spent.

21        And let's see where we are at, and maybe we will hear from

22   the DA what is going on.  So, Angie, can we set a status?

23             **THE CLERK:**  Sure.  That would be January 18th for a

24   status.

25             **THE COURT:**  January 18th at 2:30?

1          **THE CLERK:**  Yes.

2          **THE COURT:**  All right.  So I will get out a minute

3     order just memorializing what I just said, but that is the

4     disposition of the current motion.

5          **MR. EBERHART:**  May I note one thing, Your Honor?

6          **THE COURT:**  Yeah.

7          **MR. EBERHART:**  We currently have a fact discovery

8     cutoff, I believe, of January 20th.  Obviously, we are not

9     going to be able to --

10          **THE COURT:**  Yeah, we will have to -- for now I will

11    have to extend that.  Since I'm kind of putting a hold on

12    things for 60 days, we will have to extend that by 60 days.

13         That may change everything behind that.  Let's address the

14    rest of the schedule once we get there.

15         Yes, the discovery cutoff will have to be moved by at

16    least 60 days given what I have just done.

17          **MR. RABER:**  Thank you, Your Honor.

18          **MR. EBERHART:**  Thank you, Your Honor.

19          **MR. OLMOS:**  Thank you.

20          **THE COURT:**  All right.  So we will see you in January.

21               (Proceedings adjourned at 3:23 p.m.)

22                        ---oOo---

23

24

25

1

2

3

**<u>CERTIFICATE OF REPORTER</u>**

4

     I certify that the foregoing is a correct transcript

5

from the record of proceedings in the above-entitled matter.

6

7

DATE:    Friday, January 21, 2022

8

9

10

11

_____

12

    Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
  United States District Court - Official Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25